## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | |
| | **(1) TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103** |
| Beavertail Products, LLC, | **(2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Innovative Outdoor Solutions, Inc., | **(3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Rhino, Inc., | **(4) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);** |
| Otter Outdoors, LLC, | **(5) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271;** |
| Wave Armor, LLC, | **(6) COMMON LAW TRADE DRESS INFRINGEMENT;** |
| Defendants. | **(7) COMMON LAW UNFAIR COMPETITION;** |
| | **(8) COMMON LAW MISAPPROPRIATION; AND** |
| | **(9) UNJUST ENRICHMENT.** |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Beavertail Products, LLC ("Beavertail"), Innovative Outdoor Solutions, Inc. ("IOS"), Rhino, Inc. ("Rhino"), Otter Outdoors, LLC ("Otter"), and Wave Armor, LLC ("Wave Armor") (collectively "Defendants"), based on knowledge and on information and belief as appropriate, alleges as follows:

1

### The Parties

1.      YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 2000, Austin, TX 78735.

2.      Upon information and belief, IOS is a corporation organized under the laws of the State of Minnesota with a principal place of business at 411 W. Congress St., Maple Lake, MN 55358.

3.      Upon information and belief, Beavertail is a corporation organized under the laws of the State of Minnesota with a principal place of business at 411 W. Congress St., Maple Lake, MN 55358, and is wholly owned by IOS.

4.      Upon information and belief, Rhino is a corporation organized under the laws of the State of Minnesota with a principal place of business at 411 W. Congress St., Maple Lake, MN 55358.

5.      Upon information and belief, Otter is a corporation organized under the laws of the State of Minnesota with a principal place of business at 411 W. Congress St., Maple Lake, MN 55358.

6.      Upon information and belief, Wave Armor is a corporation organized under the laws of the State of Minnesota with a principal place of business at 411 W. Congress St., Maple Lake, MN 55358.

7.      Upon information and belief, each of the Defendants, IOS, Beavertail, Rhino, Otter and Wave Armor has the same address for their principal place of business, 411 W. Congress St., Maple Lake, MN 55358.

8.      Defendants maintain at least ten dealers in Texas and Defendants' principal websites reach into Texas, including in this District.

### Jurisdiction and Venue

9.      This is an action for trade dress dilution under Section 16.103 of the Texas Business & Commerce Code, trade dress infringement, unfair competition and false designation

2

of origin, patent infringement, misappropriation, and unjust enrichment.  This action arises under Texas Business & Commerce Code, state common law, including the law of Texas, federal common law, the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("Lanham Act"), and the U.S. Patent Laws, 35 U.S.C. §§ 271, 281, 283-285.

10.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

11.     Defendants did and continue to advertise, offer for sale, and sell infringing cooler products to customers, including customers in the State of Texas and in this District.

12.     This Court may exercise personal jurisdiction over Defendants based upon Defendants' contacts with this forum, including at least Defendants' tortious acts giving rise to this lawsuit within this district, and Defendants' regular and intentional conduct of business here.

13.     Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

### General Allegations – YETI's Trade Dress

14.     For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty coolers.  YETI created unique, distinctive, and non-functional designs to use with YETI's coolers.  YETI has extensively and continuously promoted and used these designs for years in the United States.  Through that extensive and continuous use, the YETI designs have become a well-known indicator of the origin and quality of YETI cooler products.  The YETI designs also have acquired substantial secondary meaning in the marketplace and have become famous.  YETI owns trademark and trade dress rights relating to the source identifying features of its cooler designs.  YETI also owns United States Patent Nos. D712,721, and D712,722 to features of the YETI cooler designs and United States Patent Number 8,910,819 directed to functional aspects of the cooler (hereafter, collectively referred to as the "YETI Patents" and attached as Exhibits A – C).

15.     In about 2008, YETI introduced the "Tundra[®]" cooler into the marketplace.[1]  As a result of YETI's considerable investments and efforts, the Tundra cooler is designed and built to provide extreme insulating capabilities and exceptional durability.   YETI has invested substantially in the design, development, manufacture, and marketing of Tundra coolers.

16.     YETI has sold more than 1,000,000 Tundra coolers throughout the United States, including sales to customers in the state of Texas.  YETI has expended significant resources advertising and marketing its Tundra coolers.  The design and features of Tundra coolers have also received widespread and unsolicited public attention.  For example, the Tundra designs have been featured in numerous newspaper, magazine, and Internet articles directed to outdoor enthusiasts.

17.     The Tundra cooler designs have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI.   Illustration 1 below shows exemplary Tundra coolers sold by YETI.

---

[1] YETI owns Trademark Registration No. 4,083,930 for the trademark TUNDRA for portable coolers.

**Illustration 1:  Examples of YETI Tundra® 45 Coolers**



18.     As a result of YETI's continuous and exclusive use of the designs for more than seven years, YETI's marketing, advertising and sales of the design, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the Tundra cooler designs.

19.     YETI's trade dress rights in the designs and appearance of the Tundra cooler,

include, but are not limited to, (1) the style line on the front of the cooler; (2) the style line on the back of the cooler; (3) the style line on each side of the cooler; (4) the "duck-bill" tapered front corners of the cooler; (5) the inverted style line above the nameplate and below the lid; (6) the ledge around the perimeter of the cooler; (7) the design and appearance of the rope handles, (8) the front, side and rear design of the feet of the cooler; (9) the placement and design of the slots on the side, front and rear of the  cooler; and (10) the color contrast, color combinations and shapes of features of the cooler; whether these elements are alone or in any combination with each other, and including the overall look and appearance of the Tundra coolers. These features, alone or in combination, and including the overall look and appearance of the Tundra coolers, are collectively hereafter referred to as the "YETI Trade Dress."

20.    As a result of YETI's years of exclusive, continuous and substantial use, advertising, and sales of coolers bearing the YETI Trade Dress, and the publicity and attention that has been paid to the YETI Trade Dress, the YETI Trade Dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate it as a source identifier of YETI.

21.    YETI has taken additional steps to protect its ornamental cooler designs.  On September 9, 2014 YETI obtained United States Design Patent Nos. D712,721 and D712,722 to features of the ornamental cooler design.  Exemplary views of claims of United States Design Patent Nos. D712,721 and D712,722 are displayed in Illustration 2 below.

| Illustration 2:  Exemplary Views of YETI Patent Claims |
|---|



| U.S. Patent No. D712,721 | U.S. Patent No. D712,722 |
|---|---|

22.     YETI also has taken steps to protect certain functional features of its coolers.  On December 16, 2014, YETI obtained a utility patent entitled "Insulating Container and Latching Mechanism" and bearing United States Patent Number 8,910,819.

23.     YETI owns all right, title, and interest in and to the YETI Patents.

### General Allegations – Defendant's Unlawful Activities

24.     Defendants have and are continuing to misappropriate the goodwill and secondary meaning in the YETI Trade Dress in YETI's coolers and infringe the YETI Patents.  Defendants are purposefully advertising, offering for sale and selling coolers under at least the names "Beavertail True 42 Cooler," "Otter 42 Quart Cooler," "Wave Armor Roto-Molded Cooler – 42 Quart," and "Rhino True 42 Quart Cooler" that include the YETI Trade Dress and that bear designs and features that are covered by one or more claims of the YETI Patents (collectively, the "Infringing Products").  Defendants' coolers are offered in similar sizes as YETI's own products.  Defendants' coolers are confusingly similar imitations of YETI's coolers and the YETI Trade Dress.  Defendants' actions infringe and dilute YETI's Trade Dress rights, infringe

the YETI Patents, constitute unfair competition and false designation of origin, as well as unjust enrichment, misappropriation, and common law trademark infringement.

25.   Illustration 3 below shows examples of Defendants' Infringing Products.



**Illustration 3:  Examples of Infringing Products**

**Beavertail True 42 Cooler**

**Otter 42 Quart Cooler**



**Wave Armor Roto-Molded Cooler – 42 Quart**

**Rhino True 42 Quart Cooler**

26.     YETI used the YETI Trade Dress extensively and continuously before Defendants began selling, offering to sell, distributing, or advertising the Infringing Products.  Moreover, the YETI Trade Dress became famous and acquired secondary meaning in the United States and in the State of Texas before Defendants commenced its use of the YETI Trade Dress.

27.     YETI never authorized Defendants to sell, offer to sell, distribute, or advertise the Infringing Products.

28.     Defendants' activities also infringe on the YETI Patents.

29.     Defendants' engage in substantial activity in Texas and this District.  Examples of Defendants' activity include: (i) Defendants' maintain at least ten dealers in Texas and (ii) Defendants' principal websites reach into Texas, including in this District.

30.     As a result of Defendants' activities related to the Infringing Products, there is a strong likelihood of confusing associations in the marketplace between the Infringing Products and Defendants on the one hand, and YETI's coolers, the YETI Trade Dress and YETI on the other hand, that is indicative of consumer confusion and misappropriation of YETI's hard-earned rights and goodwill in the YETI Trade Dress.

31.     On February 20, 2015, counsel for YETI mailed a letter to Beavertail's manager at Beavertail's business address in Minnesota.  The letter identified that the Beavertail True 42 Cooler infringed the YETI Trade Dress and infringed the YETI Patents and required that Beavertail cease the infringements.  The letter stated that YETI was "willing to resolve this matter amicably" and that YETI would "require  Beavertail's full cooperation to do so."  The letter required a response from Beavertail by March 6, 2015.

32.     Despite the readily apparent visual similarity of the Beavertail product to the YETI Trade Dress and infringement of the YETI Patents, Defendant refused to cease marketing, offering for sale or selling the Infringing Coolers.  Defendants also chose not to respond to YETI's letter or contact YETI in any manner.  Instead, Defendants Beavertail, Rhino, and IOS filed a declaratory judgment complaint against YETI on March 5, 2015 asserting invalidity of the YETI Patents and non-infringement of YETI's trade dress rights (Case No. 15-cv-1181 (D. Minn.)).

33.     On information and belief – as evidenced at least by the facts and circumstances alleged above – Defendants' infringements have been intentional and willful, in bad faith, and manifest a deliberate and knowing disregard of YETI's trade dress and patent rights, making this an exceptional case under 15 U.S.C. § 1117 and/or 35 U.S.C. § 285, and entitling YETI to, among other things, Defendants' profits, actual damages, enhanced damages, and attorneys' fees under at least Tex. Bus. & Com. Code § 16.104, 15 U.S.C. § 1117, and/or 35 U.S.C. § 285.

**Count I:**
**Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103**

34.    YETI re-alleges each and every allegation set forth in paragraphs 1 through 33 above, inclusive, and incorporates them by reference herein

35.    Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products violates Section 16.103 of the Texas Business & Commerce Code.

36.    The YETI Trade Dress is entitled to protection under Texas law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.    YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States and in the State of Texas.  Through that extensive and continuous use, the YETI Trade Dress has become a famous and well-known indicator of the origin and quality of YETI cooler products in the United States and in the State of Texas, and the YETI Trade Dress is widely recognized by the public throughout Texas as a designation of the source of YETI's cooler products.  The YETI Trade Dress also acquired substantial secondary meaning in the marketplace, including in the State of Texas.  Moreover, the YETI Trade Dress became famous and acquired this secondary meaning before Defendant commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

37.    Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause, and has caused, dilution of the famous YETI Trade Dress at least by eroding the public's exclusive identification of the famous YETI Trade Dress with YETI, by lessening the capacity of the famous YETI Trade Dress to identify and distinguish YETI cooler products, by associating the YETI Trade Dress with products of inferior quality, and by impairing the distinctiveness of the famous YETI Trade Dress.

38.    Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

11

39.     On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

40.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104

**Count II:**
**Trade Dress Infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

41.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 40, inclusive, and incorporates them by reference herein.

42.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing YETI's rights in the YETI Trade Dress.  Defendants' use of the YETI Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with YETI and as to the origin, sponsorship or approval of the Infringing Products.

43.     The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States.  Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

44.     Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

45.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

46.     On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

47.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1116 and 1117.

**Count III:**
**Unfair Competition and False Designation of Origin under Section 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

48.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 47 above, inclusive, and incorporates them by reference herein.

49.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products, in direct competition with YETI, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes unfair competition, at least because the Defendants have obtained an unfair advantage as compared to YETI, through its use of the YETI Trade Dress and/or colorable imitations thereof, to falsely designate the origin, affiliation or sponsorship of Defendants and of the Infringing Products.

50.    The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States.  Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

51.    Defendants' use of the YETI Trade Dress and colorable imitations thereof constitutes a false designation of origin that is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

52.    Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

53.    On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

54.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1116 and 1117.

**Count IV:**
**Trade Dress Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

55.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 54 above, inclusive, and incorporates them by reference herein.

56.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.     The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  The YETI Trade Dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of the YETI Trade Dress for years in the United States.  Through that extensive and continuous use, the YETI Trade Dress has become a famous, well-known indicator of the origin and quality of YETI cooler products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI's cooler products.  The YETI Trade Dress also has acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress became famous and acquired this secondary meaning before Defendants commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

58.     Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause, and has caused, dilution of the famous YETI Trade Dress at least by eroding the public's exclusive identification of the famous YETI Trade Dress with YETI, by lessening the capacity of the famous YETI Trade Dress to identify and distinguish YETI cooler products, by associating the YETI Trade Dress with products of inferior quality, and by impairing the distinctiveness of the famous YETI Trade Dress.

59.     Defendant's use of the YETI Trade Dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

60.     On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

61.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count V:
### Patent Infringement Under 35 U.S.C. § 271

62.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 61 above, inclusive, and incorporates them by reference herein.

63.     By making, using, selling, and/or offering for sale the Infringing Products, Defendants have infringed, and will continue to infringe, the YETI Patents under 35 U.S.C. § 271 literally and/or under the doctrine of equivalents.

64.     On information and belief, Defendants' infringement of the YETI Patents under 35 U.S.C. § 271 is willful and deliberate.

65.     As a consequence of Defendants' infringing acts, YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. §§ 281, 284, 285, and 289.  As a consequence of Defendants' infringing acts, Defendants have also caused, are causing, and will continue to cause irreparable harm to YETI, for which there is no adequate remedy at law, and for which YETI is entitled to injunctive relief under 35 U.S.C. § 283.

### Count VI:
### Common Law Trademark Infringement

66.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 65 above, inclusive, and incorporates them by reference herein.

67.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products, in direct competition with YETI, constitute common law trademark infringement, at least because the Defendants' use of the YETI Trade Dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products.

68.     The YETI Trade Dress is entitled to protection under both federal and common law.   The YETI Trade Dress uses unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States and the State of Texas.   Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.   The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the YETI Trade Dress acquired this secondary meaning before Defendant commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

69.     Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

70.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

71.     On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.   Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

72.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Unfair Competition**

73.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 72 above, inclusive, and incorporates them by reference herein.

74.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of the Defendant's goods and/or by simulating the YETI Trade Dress in an intentional and calculated manner.

75.     The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendant commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

76.     Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

77.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for

which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.

78.     On information and belief, Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, as demonstrated in Illustration 4 above, and by the Defendants' continuing disregard for YETI's trade dress rights.

79.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## Count VIII:
## Common Law Misappropriation

80.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 79 above, inclusive, and incorporates them by reference herein.

81.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products, in direct competition with YETI, constitute common law misappropriation.

82.     The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

83.     YETI created the products covered by the YETI Trade Dress through extensive time, labor, effort, skill and money.  Defendants have wrongfully used the YETI Trade Dress and/or colorable imitations thereof in competition with Plaintiffs and gained a special advantage

because they were not burdened with the expenses incurred by YETI.  Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

84.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.  Moreover, a result of its misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort and money that YETI invested in establishing the reputation and goodwill of the YETI Trade Dress.

85.     Defendants' misappropriation of the YETI Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

86.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**Count IX:**
**Unjust Enrichment**

87.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 86 above, inclusive, and incorporates them by reference herein.

88.     Defendants' offers to sell, sales, distribution, and/or advertisement of Infringing Products, in direct competition with YETI, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at YETI's expense.

89.     The YETI Trade Dress is entitled to protection under both federal and common law.  The YETI Trade Dress uses unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used the YETI Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI cooler products.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced its use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

90.     YETI created the products covered by the YETI Trade Dress through extensive time, labor, effort, skill and money.  Defendants have and are wrongfully using the YETI Trade Dress and/or colorable imitations thereof in competition with YETI, and have and are gaining a wrongful benefit by undue advantage, because they have not been burdened with the expenses incurred by YETI, yet is obtaining the resulting benefits for its own business and products.

91.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendants have and are wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

92.     Defendants' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress and by the Defendants' continuing disregard for YETI's trade dress rights.

93.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits.

## DEMAND FOR JURY TRIAL

94.     Plaintiff YETI Coolers LLC hereby demands a jury trial on all issues so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## <u>Relief Sought</u>

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Defendants have (i) willfully diluted the YETI Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (ii) willfully infringed the YETI Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) willfully engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) willfully diluted the YETI Trade Dress in violation of § 1125(c) of Title 15 in the United States Code; (v) willfully violated YETI's common law rights in the YETI Trade Dress; (vi) willfully engaged in common law unfair competition; (vii) willfully engaged in common law misappropriation; (viii) been unjustly enriched at YETI's expense; and (ix) infringed the YETI Patents in violation of § 271 of Title 35 in the United States Code;

2.     A preliminary and permanent injunction against further infringement and dilution of the YETI Trade Dress, further infringement of the YETI Patents, and further acts of unfair competition, misappropriation and/or unjust enrichment by Defendants, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from making, selling, offering to sell, distributing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of the YETI Trade Dress or YETI Patents, pursuant to at least Tex. Bus. & Com. Code § 16.104, 15 U.S.C. § 1116, and 35 U.S.C. § 283;

3.     An Order directing Defendants to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

4.      An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of the YETI Trade Dress in Defendants' possession or control, (iii) all plates, molds and other means of making the Infringing Products in Defendants' possession, custody or control, and (iv) all advertising materials related to the Infringing Products in Defendants' possession, custody or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing Defendants to publish a public notice providing proper attribution of the YETI Trade Dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.      An Order barring importation of Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to 15 U.S.C. § 1125(b);

7.      An award of Defendants' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and postjudgment interest, and reasonable attorney fees pursuant to at least Tex. Bus. & Com. Code § 16.104 and 15 U.S.C. § 1117;

8.      An award of damages adequate to compensate YETI for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of Defendants' profits from their patent infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs and reasonable attorney fees, pursuant to 35 U.S.C. §§ 284 and 285; and

9.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: _/ s / Joseph Gray_

Joseph Gray
Texas Bar No. 24045970
joseph.gray@bakerbotts.com
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 322-2639
(512) 322-8385 fax

BANNER & WITCOFF, LTD.

Joseph J. Berghammer (*pro hac vice forthcoming*)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Katie L. Becker  (*pro hac vice forthcoming*)
Illinois Bar No. 6292366
kbecker@bannerwitcoff.com
Eric J. Hamp  (*pro hac vice forthcoming*)
ehamp@bannerwitcoff.com
Illinois Bar No. 6306101
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
(312) 463-5000
(312) 463-5001 fax

**ATTORNEYS FOR PLAINTIFF YETI COOLERS, LLC**